'GEORGE PEPPERDINE, Trustee in Bankruptcy in charge of Estate of A. B. GOOD, Appellant, v. BANK OF SEYMOUR, Respondent.'

St. Louis Court of Appeals, March 31, 1903.

1. **Bankruptcy Proceedings**: LIEN OF JUDGMENT IN FAVOR OF CREDITOR: JUDGMENT OF CREDITOR: RES ADJUDICATA. Adjudging an insolvent party a bankrupt does not necessarily conclude the rights or title of a judgment creditor in the bankrupt's property, acquired by a judgment obtained prior to but within the four months next to the adjudication in bankruptcy, or even subsequent to such adjudication in bankruptcy.

2. ———: ———: MUST BE PARTY OR PRIVY TO JUDGMENT TO BE CONCLUDED. The resistance by a creditor of involuntary bankruptcy proceedings, instituted against his debtor under Bankrupt Act 1898, chapter 4, section 18, Act July 1, 1898 (U. S. Comp. Stat. 1901, p. 3429), authorizing creditors so to do, does not make such creditor a party to the proceedings, so as to conclude his rights in property acquired from the bankrupt.

3. ———: ———: LIEN OF ATTACHMENT FROM DATE OF LEVY. The lien of an attachment dates from the date of the levy, and when matured by judgment, execution, and sale thereunder, relates back to the date of the levy, and passes title as of that date, free from subsequent incumbrances.

4. ———: ———: ———: ENTRY OF JUDGMENT: LIEN, BANKRUPTCY. Under chapter 7, section 67f, of the Bankrupt Act, July 1, 1898 (U. S. Comp. St. 1901, p. 3450), providing for the avoidance of all liens, judgments, and attachments acquired within four months prior to the inception of bankruptcy proceedings, the entry of judgment in an attachment suit within four months of the filing of a petition in bankruptcy does not avoid the lien of the attachment acquired more than four months prior to the filing of the petition.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

AFFIRMED.

STATEMENT.

This is an action by the trustee of a bankrupt's estate to recover a preferential payment alleged to have been made by the bankrupt to the defendant, and was brought originally in the circuit court of Webster county, but removed on a change of venue to the circuit court of Greene county. On the fifteenth of August, 1898, defendant commenced an attachment suit against A. B. Good, subsequently adjudged bankrupt, then a lumber and furniture merchant in Seymour, and levied on his stock of goods; other creditors of Good later brought attachment suits for their respective debts. On October 10, 1898, the stock of goods attached was sold pursuant to an order of the circuit court made in the attachment suit brought by the defendant, and the proceeds of the sale were held by the sheriff to await the result of the attachment proceedings; on March 24, 1899, after a previous mistrial before a jury, Good withdrew his plea in abatement to defendant's attachment, and judgment was rendered sustaining the attachment and on plaintiff's cause of action against the defendant therein for $1,900. Judgment by default was also rendered in favor of the subsequent attaching creditors. The sheriff paid to defendant under its judgment $1,300, the recovery of which amount is the purpose of this suit. On the twelfth of June, 1899, a petition in involuntary bankruptcy was filed against Good in the western district of Missouri, the act of bankruptcy complained of being the permitting and procuring of the above judgment against him in favor of the defendant and the preferring by him of such bank as a creditor. The defendant herein employed its own attorney to resist the bankruptcy proceeding on behalf of Good, and a trial was had, Good adjudged a bankrupt, and the plaintiff herein appointed trustee of his estate.

Omitting the formal averments of his petition, the plaintiff alleged as the preferential payment complained of, that while Good was indebted and insolvent,

and within four months before the filing of the petition in bankruptcy, the defendant obtained a judgment against him through legal proceedings, and obtained an execution thereunder, and levied upon his property, and thereby obtained property and money belonging to him to the amount of $1,300, that all such proceedings were null and void and the money and property so obtained a part of the bankrupt's estate. As a further ground the plaintiff alleged that while Good was so indebted and insolvent, and within four months of the filing of the petition in bankruptcy, he procured and suffered a judgment to be entered against himself and in favor of defendant bank, and made a transfer of his property and money to the amount of $1,300 to defendant; that the purpose of such judgment and transfer and their effect was and would be to enable defendant to obtain a greater percentage of its debt than any other of his creditors of the same class; that defendant had reasonable cause to believe Good was insolvent and indebted, and that it was intended thereby to give it a preference.

At the trial before the court the following stipulation was introduced and read:

"It is stipulated that the following statement of facts may be read in evidence on the trial of the above entitled cause, either party to be entitled to urge objections and save exceptions to the admission of said evidence on account of irrelevancy."

Said agreed statement of facts is as follows:

"That prior to August, 1898, A. B. Good was a merchant of Seymour, Missouri.

"That in August, 1898, the defendant Bank of Seymour brought, in the circuit court of Webster county, a suit by attachment against him, that a writ was issued and the sheriff of said county seized and levied upon a certain stock of furniture, lumber, etc., under the writ of attachment.

"That immediately thereafter there were several other attachment suits brought in said circuit court, and

levies made thereunder, all, however, being subsequent to the levy of the Bank of Seymour.

"That a short time after said writ of attachment was levied the Bank of Seymour presented a petition to said circuit court for an order of sale of said property, and the court made an order for the sheriff to sell the same, as provided by statute, and hold the proceeds for the further orders of the court, and that thereafter, under and by virtue of said order of sale, having duly advertised the same, the sheriff sold said attached property and the proceeds therefrom, amounting to $1,421, was held by him to await the result of said action.

"That defendant Good filed pleas in abatement to all said actions of attachment.

"That in the case of the Bank of Seymour there was also filed an interplea by one A. B. Ritchie, one of the creditors represented by the trustee in bankruptcy in this action. (The last statement was objected to by plaintiff as irrelevant and immaterial to the issues herein, and his objection being overruled he duly excepted at the time.)

"That said Ritchie claimed a part of said property by virtue of a chattel mortgage, and at the March term, 1899, of the circuit court of Webster county, said interplea was duly tried by a jury in said court and a judgment rendered in favor of said Bank of Seymour and against said interpleader. (The last statement objected to by plaintiff as irrelevant and immaterial and foreign to any issues in this case and his objections being overruled he then excepted at the time.)

"That none of the subsequent attaching creditors requested to be made parties or were made parties, but the attorneys representing said subsequent creditors, also represented said A. B. Good in his defense to said suit of the plaintiff bank.

"That the trial resulted in a hung jury.

"That thereupon at the same term of court and after said jury had been discharged by the court, there

was filed in said cause by the attorney of said bank the following stipulation, which had been prepared by said attorney and which was signed by said Good, to-wit:

" 'The Bank of Seymour, plaintiff, v. A. B. Good, defendant. In the circuit court of Webster county, March term, 1899. I request that my plea in abatement in the above case be withdrawn, and consent that the attachment of plaintiff be sustained. Marshfield, Mo., March 24, 1899.

" 'A. B. GOOD.'

"That said writing was signed by said Good without his having consulted with the attorneys who had defended said action, but that same was filed in open court when said attorneys were present.

"That no defense was interposed by the said Good in any of the other attachment suits then pending against him, and a judgment was rendered at said term against him in said suits by default.

"That upon the filing of said stipulation in said case, said plea in abatement was withdrawn and judgment was rendered by the court sustaining said attachment and on the merits in favor of said bank and against said Good for $1,900, the amount sued for, and the net proceeds of the sale of said property, after paying the costs, amounting to $1,300, was delivered to said bank by the sheriff by virtue of said judgment and the execution issued thereon.

"That in said case the writ of attachment was levied on the fifteenth day of August, 1898, the order of sale for the attached property was made at the September term of the Webster Circuit Court on the tenth day of October, 1898, and that the judgment sustaining said attachment and in favor of said bank was rendered on the twenty-fourth day of March, 1899.

"That within four months from the rendition of said judgment and on the twelfth day of June, 1899, a petition in involuntary bankruptcy was filed against said Good in the United States District Court for the South-

ern Division of the Western District of Missouri, to have said Good adjudged a bankrupt. That said Good appeared to said action and made a defense to said suit, and the expense of making said defense, including an attorney's fee and all other necessary costs and expenses in defending against said bankruptcy action was paid by the defendant Bank of Seymour.

"That said Good was, in said proceedings, adjudged a bankrupt, and that George Pepperdine, plaintiff herein, was selected and appointed as trustee of said estate and duly qualified and is the duly appointed and acting trustee in charge of said estate.

"That no assets have come into his hands and that debts and claims have been proven and duly allowed against said bankrupt by the referee in bankruptcy aggregating $3,000 or more.

"That at the time said judgment in favor of said Bank of Seymour against said Good was rendered by the circuit court of Webster county, the said bank knew that said A. B. Good was insolvent and largely indebted, and that the payment of the proceeds of the sale of said property to it would leave and did leave said Good without property which could be applied to the payment of his debts or means of satisfying the same.

"'That all the stock in the Bank of Seymour except two shares was owned by the father-in-law, brother-in-law and wife of said Good."

Plaintiff also introduced the petition in bankruptcy against Good, filed June 12, 1899, the answer of Good thereto in effect a general denial, the order in such bankruptcy proceedings made by the Federal court adjudging Good a bankrupt, and the opinion of the Federal judge in such proceedings.

At the close of the testimony plaintiff asked declarations of law, all of which were refused by the court, the court giving of its own motion the following:

"The defendant having defended the bankruptcy proceeding, is bound by everything decided therein that

was legitimately before the court for determination. But the rights here involved were not in issue there. Under the law of Missouri in reference to attachments, the lien of a levy, if more than four months old, is not vacated by an adjudication in bankruptcy, even though the judgment in the cause is within four months of the filing of the petition.''

Judgment was thereupon rendered in favor of defendant, and after proper steps an appeal to this court followed.

*White & McCammon* for appellant.

(1)   The property for which plaintiff brings this action is a part of the bankrupt's estate.   The Bankrupt Act, paragraph f, section 67, provides that ''all levies, judgments, attachments or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged, and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt,'' etc.   ''Provided, that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment or other lien of a bona fide purchaser for value, who shall have acquired the same without notice or reasonable cause for inquiry.''   Defendant's contention here, as in the bankruptcy court, is that the lien of the bank in the property of the bankrupt was obtained by the levy of the attachment and the sale of the property under order of the circuit court and not by the judgment of the court.   The plaintiff, on the other hand, holds that the property obtained by defendant in its suit against the bankrupt, was obtained by virtue of said bankrupt withdrawing his plea in abate-

ment and agreeing to let judgment go against him, and that by reason of said judgment defendant received its preference. (2) It is settled in this State that an attaching creditor receives no title to the property attached by means of his levy of attachment. The title remains unchanged, the property being *in custodia legis* to abide the event of the suit without change of ownership. 1 Wade on Att., secs. 27, 45, 136, 230. "The interest of parties to the attachment suit is contingent upon the termination of the controversy." State ex rel. v. Finn, 98 Mo. 540; Lesueur v. Neal, 53 Mo. 419. (3) So, a judgment in a garnishment proceeding is dependent upon the judgment in the principal case. If the latter is void, reversed or satisfied, the garnishment judgment shares the same fate. Smith v. Railroad, .49 Mo. App. 54; McCloon v. Beattie, 46 Mo. 391. (4) The adjudication of bankruptcy proceeds *in rem,* and all persons interested in the *res* are regarded as parties to the bankruptcy proceeding, not only the bankrupt, but also all his creditors, whether they come in and prove up or not. In re Lesser, 100 Fed. 438; In re Am. Brewing Co., 112 Fed. 752, and cases cited therein. Carter v. Hobbs, 92 Fed. 574; In re Bear, 3 N. B. N. & R. 173; Shawhan v. Werritt, 7 How. 627. (5) Defendant is bound by the adjudication rendered in the bankruptcy proceeding, because it employed counsel to defend against that proceeding, and the defense was made therein solely for its benefit. Herman on Estoppel, sec. 157; 1 Greenleaf on Ev., sec. 538.

*Mann, Sebree & Farrington* for respondent.

(1) The Bankrupt Law of 1898, section 67, subsection F, provides: "All levies, judgments, attachments or other liens, obtained through legal proceedings, against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void

in case he is adjudged a bankrupt, and the property effected by the levy, judgment, attachment or other lien, shall be deemed wholly discharged and released from the same." In re Beaver Coal Co., 113 Fed. 889; In re Blair, 108 Fed. 529; Pickens v. Dent, 106 Fed. 657; Powers D. G. Co. v. Nelson, 7 Am. Bkrptcy. Rep. 506; Coal Co. v. Goodwin, 95 Me. 246, 85 Am. St. 408. (2) Section 67-F. providing that all levies, judgments, and attachments, or other liens obtained through legal proceedings, within four months shall be void, etc., is only intended to apply to such judgments as themselves create liens, and when thus created are made ineffectual by the adjudication in bankruptcy, and that a creditor's bill which was filed long before the bankruptcy proceedings were begun was not made ineffectual, although the judgment was ineffectual. In re Kavanaugh, 3 Am. Bkrptcy. Rep. 832, 99 Fed. 928; Taylor v. Taylor, 4 Bkrptcy. Rep. 211, 45 Atl. 440; Doyle v. Heath, 4 Am. Bkrptcy. Rep. 705, 47 Atl. Rep. 213. (3) In order to bar as *res judicata* the judgment must be a final one, and must have been rendered on its merits, and to constitute a judgment in a former suit between the same parties an estoppel, the record must show the same subject-matter had been passed upon, and an adjudication had in that suit. McKnight v. Taylor, 1 Mo. 202; Taylor v. Larkin, 12 Mo. 120; Garrett v. Greenwell, 92 Mo. 120; Norton v. Bohart, 105 Mo. 615. (4) An attachment creates a lien from the time of the levy which bankruptcy will not dissolve, if the attachment lien is created more than four months prior to the institution of bankruptcy; and further, it is the lien of a judgment created within four months, and not the judgment itself which the bankrupt law annuls and makes void.

REYBURN, J.—1. This case is brought to this court upon the contracted transcript permitted by section 813 of the statutes, and the abstract in print filed by appellant is assailed by respondent as insufficient,

but the infirmities, if present and material in the original abstract, have been removed and any defects supplied by the supplemental abstract now on file establishing without challenge or contradiction by respondent the perfecting of the appeal in lawful manner. Taken together these abstracts contain the substantial requirements pointed out by this court and we are now authorized to review the case on its merits.

· 2. Appellant urges that the adjudication in bankruptcy is conclusive upon respondent, asserting that the question in issue in the present case was the identical question decided by the bankruptcy court. The bankruptcy court had no lawful authority to pass upon any but the sole issue before it: whether within four months next before the petition Good committed an act of bankruptcy by suffering defendant to obtain judgment against him on March 24, 1899, and no adjudication upon any other issue was sought or rendered in the proceeding. A judgment is conclusive upon all parties in privity to the litigation and privity is defined by eminent authority to be a mutual or successive relationship to the same rights of property; but the same authority declares that to create this relationship two requisites must concur: first, the party to be thus connected with the judgment must be one who claims an interest in the subject affected, through or under one of the parties, and, second, privies bound by the judgment are those who acquired an interest in the subject-matter after the rendition of the judgment and if their title or interest antedated such judgment they are not bound unless made actual parties. 2 Black, Judgments (2 Ed.), sec. 549; 1 Freeman, Judgments (4 Ed.), sec. 162.

It may be conceded that plaintiff, upon his election as trustee of the bankrupt's estate by the creditors of the latter, became successor to the rights and interests of the general creditors in such estate, but the defendant was no party, direct or intermediate, to the bankruptcy proceedings, and whatever rights it possessed

in that portion of the bankrupt's property herein involved, had attached prior to the adjudication. Subject to the determination of the further question hereinafter taken up, the defendant's succession to such rights of property claimed by it having occurred prior to the institution of the bankruptcy proceeding, it could not be privy to any judgment ensuing therein. Nor is the effect of the adjudication amplified so as to reach and conclude defendant by the resistance through counsel in its employ to the bankruptcy proceeding. In such conduct, it was merely in the lawful exercise of the right expressly recognized and accorded to all creditors by the terms of the bankrupt act to oppose an adjudication. Bankruptcy Law of 1898, chap. 4, sec. 18. The defendant is concluded and bound by the adjudication in bankruptcy to the same extent as the rest of the world, and no farther, and as against it as other parties concerned, and in the same manner as against other creditors, the judgment of the issue of Good's bankruptcy under the bankruptcy law is final and can not be questioned.

3. The bankrupt act provides that all levies, judgments, attachments or other liens obtained through legal proceedings against an insolvent within four months of the inception of the proceedings in bankruptcy, shall be annulled and avoided. Chap. 7, sec. 67-f. By necessary implication, all levies, judgments, attachments and other liens secured earlier that four months prior to the commencement of the bankruptcy, are excluded from the operation of the act. It has been held that even a release of the debtor by his discharge in bankruptcy will not bar a creditor from enforcing by judgment a lien secured by attachment more than four months before the bankruptcy proceeding was inaugurated. Powers, etc. v. Nelson, 7 Am. Bank. Rep. 506; Stickney et al. v. Goodwin, 95 Me. 246; s. c., 85 Am. State Rep. 408. Also that the equitable lien, acquired by a creditor of an insolvent by filing a creditor's bill to set aside

a fraudulent conveyance, has its date from the filing of such bill, and not from date of decree, and is not avoided by the bankruptcy proceeding, where the bill is filed more than four months prior to the petition in bankruptcy, although the decree is rendered within four months. Doyle v. Heath, 47 Atl. 213; Taylor v. Taylor, 45 Atl. 440; In re Kavanaugh, 99 Fed. 928. Under the interpretation of the statutory provisions by the courts of this State, a specific lien is secured from the moment of levy by attachment upon the property seized, matured by the judgment and the execution thereunder related back to the time of the levy, so that a sale thereunder passes a title divested and discharged of all succeeding incumbrances: the lien is created by the attachment levy and bears date thereof, but is fixed by the judgment. Winningham v. Trueblood, 149 Mo. 572; Hall v. Stephens, 65 Mo. 670; Huxley v. Harold, 62 Mo. 576; Lackey v. Seibert, 23 Mo. 85.

The judgment does not create a new lien nor discharge the lien existing bey virtue of the attachment levy but merely directs its enforcement. A proper construction of the bankrupt act makes it evident that the preferential lien of a judgment, where a lien is obtained as the effect of a judgment, was intended to be destroyed by the adjudication in bankruptcy, but the purpose of the law was not to render void the judgment itself as such. The bankrupt act does not annul an attachment lien obtained more than four months before the bankruptcy proceeding was inaugurated, but recognizes an attachment as a lien and provides especially that liens given or accepted in good faith and not in contemplation of or in fraud upon the act and for a present consideration, recorded, if record thereof be required to impart notice, shall not be affected. The present bankrupt law also contemplates that judgment may be recovered against the bankrupt after the adjudication and established against his estate. Chap. 7, sec. 63 (5). A literal and different construction of this section of the statute would

invalidate a lien obtained more than four months prior to the bankruptcy proceedings and protected by the express terms of the act.

The question here presented has been before various Federal courts. In the United States District Court of Massachusetts, it is held that an attachment on mesne process under the statutes of that State which create a lien, enforcible, however, only by obtaining judgment and issuing execution thereon within a fixed time, is not discharged under the bankrupt act by the filing of a petition in bankruptcy against the defendant more than four months after such attachment was levied, although judgment was not obtained until within the four months; nor are the judgment and execution issued thereon rendered void since they do not affect with a lien the property attached, but only enforce a lien existing and attached more than four months prior to the filing of the petition and by necessary implication preserved by the act. In re Blair, 108 Fed. 529.

This rule is also adopted by the United States District Court of Oregon, reversing a former ruling of the same court; In re Beaver Coal Company, 110 Fed. 630, which latter case was affirmed by the United States Circuit Court of Appeals, Ninth Circuit. In re Beaver Coal Co., 113 Fed. 889.

The State appellate court of Maine also has adopted the interpretation of the bankrupt law herein upheld. Stickney v. Goodwin, 95 Me. 246, s. c., 85 Am. St. 408.

The decision in conflict with the views herein expressed might be distinguished by the language of the States under which the questions are presented, but in any aspect, we are of the opinion that the reasoning of the cases above is more satisfactory and more in consonance with the spirit and purposes of the bankrupt act than the opinions expressed in the opposing cases. In re Lesser, 100 Fed. 433; In re Lesser, 108 Fed. 201, and In re Johnson, 108 Fed. 373.

The judgment below will be affirmed. *Bland, P. J.,* concurs; *Goode, J.,* having been of counsel in some litigation involving the same matters, does not sit.